1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMO HARRIS BANK N.A., | Case No.  1:16-cv-00482-DAD-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S AMENDED MOTION FOR DEFAULT JUDGMENT |
| v. | |
| CHARAN SINGH, | (ECF Nos. 16, 17, 18, 20) |
| Defendant. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Currently before the Court is Plaintiff's amended motion for default judgement.  (ECF No. 16.)  A hearing on the motion was held on September 20, 2016.  Counsel Farah Tabibkhoei appeared telephonically for Plaintiff.  Defendant did not appear at the hearing.  On September 30, 2016, Plaintiff filed a supplemental brief in support of Plaintiff's amended motion for default judgment.  (ECF No. 20.)   Having considered the moving papers, the Court's file, and the arguments at the hearing, the Court issues the following findings and recommendations.

## I.

## BACKGROUND

Plaintiff is a national banking association.  (Compl. ¶ 1, ECF No. 1.)  Non-party GE Capital Commercial, Inc. ("GE Capital") entered into ten loan and security agreements ("the Loan Agreements") pursuant to which GE Capital financed Defendant's purchase of certain

equipment ("the Collateral") and Defendant agreed to pay GE Capital pursuant to the terms set forth therein.  (Complaint, ECF No. 1 at ¶¶ 5-16.)  Pursuant to the Loan Agreements, Defendant granted to GE Capital a first-priority security interest in the Collateral.  (Id. at ¶ 17.)  GE Capital subsequently transferred all of its right, title, and interest in the Loan Agreements to Plaintiff, so that Plaintiff became the successor-in-interest to GE Capital with respect to all rights under the Loan Agreements and with respect to the Collateral.  (Id. at ¶ 18.)  Under the terms and conditions of the loan documents, failure to make a payment when due is considered an event of default, and upon the event of default, Plaintiff may declare the indebtedness under the Loan Agreements to be immediately due and payable.  (Id. at ¶ 20.)

Since Defendant has failed to pay the amounts due and owing, on March 17, 2016, Plaintiff sent a notice of default and acceleration to Defendant.  (Id. at ¶ 22, 24.)  However, Defendant has failed to cure the existing defaults.  (Id. at ¶ 25.)  Plaintiff has obtained possession or certain units of the Collateral ("the Repossessed Collateral").  (Id. at ¶ 26.)  The Repossessed Collateral has not yet been sold, but once it is sold, Plaintiff will apply the net sale proceeds toward the balance due under the Loan Agreements.  (Id. at ¶ 27.)  Plaintiff has not yet obtained possession of other units of collateral ("the Retained Collateral")[1].  (Id. at ¶ 28.)

On April 21, 2016, Plaintiff served a copy of the summons and complaint on Defendant by leaving the documents with Mandeep Singh, the individual who appeared to be in charge, at 5290 West Donner Avenue, Fresno, California, and the documents were mailed.  (Proof of Service, ECF No. 5.)  Defendant did not respond to the complaint, and on June 3, 2016, Plaintiff filed a request for entry of default.  (ECF No. 8.)  On June 3, 2016, the Clerk of the Court entered default against Defendant.  (ECF No. 9.)

On August 15, 2016, Plaintiff filed a motion for default judgment against Defendant. (ECF No. 14.)  On August 16, 2016, Plaintiff filed a notice of motion for default judgment

---

[1] The following units are the Retained Collateral:

| 2012 Freightliner Cascadia Series | Tractor | 1FUJGLDR0CSBA3980 |
| 2012 Freightliner Cascadia Series | Tractor | 1FUJGLDR9CSBA3962 |
| 2012 Freightliner Cascadia Series | Tractor | 1FUJGLDR6CSBF3430 |

(ECF No. 16-2 at ¶ 26.)

against Defendant.  (ECF No. 15.)  On August 16, 2016, Plaintiff filed an amended notice of

motion and motion for default judgment.  (ECF No. 16.)  On August 31, 2016, the Court issued

an order advancing the hearing on Plaintiff's amended motion for default judgment (ECF No.

16) to September 20, 2016, at 10:00 a.m. in Courtroom 9 before the undersigned.  (ECF No. 17.)

The Court also terminated Plaintiff's August 15, 2016 motion for default judgment (ECF No. 14)

and August 16, 2016 motion for default judgment (ECF No. 15).  On September 1, 2016,

Plaintiff served a copy of the Court's August 31, 2016 order on Defendant.  (ECF No. 18.)

## II.

## LEGAL STANDARDS FOR DEFAULT JUDGMENT

Entry of default judgment is governed by Federal Rule of Civil Procedure 55(b), which

states, in pertinent part:

> (2) **By the Court.**  In all other cases[2], the party must apply to the
> court for a default judgment.  A default judgment may be entered
> against a minor or incompetent person only if represented by a
> general guardian, conservator, or other like fiduciary who has
> appeared.  If the party against whom a default judgment is sought
> has appeared personally or by a representative, that party or its
> representative must be served with written notice of the application
> at least 7 days before the hearing.  The court may conduct hearings
> or make referrals—preserving any federal statutory right to a jury
> trial—when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Upon entry of default, the complaint's factual allegations regarding liability are taken as

true.  Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977); Microsoft Corp. v.

Nop, 549 F. Supp. 2d 1233, 1235 (E.D. Cal. 2008).  However, the complaint's factual allegations

relating to the amount of damages are not taken as true.  Geddes, 559 F.2d at 560.  Accordingly,

the amount of damages must be proven at an evidentiary hearing or through other means.

Microsoft Corp., 549 F. Supp. 2d at 1236.  Per Federal Rule of Civil Procedure 54(c), "[a]

default judgment must not differ in kind from, or exceed in amount, what is demanded in the

---

[2] Rule 55(b)(1) governs entry of default judgment by the clerk in cases where the plaintiff's claim is for a sum
certain or a sum that can be made certain by computation, which does not apply in this case.

pleadings."

Entry of default judgment is committed to the Court's discretion. <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471 (9th Cir. 1986). The Ninth Circuit has set forth the following factors for the court is to consider in exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

<u>Eitel</u>, 782 F.2d at 1471-72.

Once default has been entered, the factual allegations in the complaint are taken as true, but the allegation regarding the amount of damages must be proven. <u>See</u> Fed R. Civ. P. 55(b)(2); <u>Garamendi v. Henin</u>, 683 F.3d 1069, 1080 (9th Cir. 2012). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." <u>Cripps v. Life Ins. Co. of North America</u>, 980 F.2d 1261, 1267 (9th Cir. 1992).

### III.

### DISCUSSION

**A.    Jurisdiction**

1.    <u>Subject-Matter Jurisdiction</u>

The Court has subject-matter jurisdiction to rule on cases in which defendants and plaintiffs are citizens of different states and the amount in controversy is greater than $75,000. 28 U.S.C. § 1332. The Supreme Court has interpreted § 1332 to require complete diversity between parties, where "the citizenship of each plaintiff is diverse from the citizenship of each defendant." <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996).

In its complaint, Plaintiff states that it is a national banking association. (Compl. at ¶ 1.) The citizenship of nationally chartered banks is governed by 28 U.S.C. § 1348. <u>See Rouse v. Wachovia Mortg., FSB</u>, 747 F.3d 707, 709 (9th Cir. 2014). Section 1348 of Title 28 provides:

> All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.

28 U.S.C. § 1348.

The United States Supreme Court has held that a bank is "located" for purposes of qualifying for diversity jurisdiction in the State designated in its articles of association as its main office.  See Wachovia Bank v. Schmidt, 546 U.S. 303, 318 (2006).  Although the Supreme Court did not decide whether a national bank is also a citizen of the state of its principal place of business, the Ninth Circuit subsequently decided that that under § 1348 a national banking association is a citizen only of the state in which its main office is located.  See Rouse, 747 F.3d at 715.

In the complaint, Plaintiff states that its main office is located in Chicago, Illinois. (Compl. at ¶ 1.)  Therefore, for purposes of diversity jurisdiction, Plaintiff is located in Illinois and is a citizen of Illinois.  See Wachovia Bank, 546 U.S. at 318.  Plaintiff's complaint states that Defendant is an individual residing in California.  (Compl. at ¶ 2.)  Therefore, Defendant is a citizen of California.  As Plaintiff is a citizen of Illinois and Defendant is a citizen of California, the Court finds that the complete diversity requirement is satisfied.  Plaintiff alleges that the amount in controversy is in excess of $75,000.  (Compl. at ¶ 3.)  Accordingly, the Court has subject matter jurisdiction over this case.

2.   Venue

The Court notes that the Loan Agreements state that legal actions regarding the Loan Agreements should be brought in the state or federal courts in Utah, except that suit can be brought in the state or federal courts of the state where the equipment is located if necessary or advisable to exercise remedies available under the Loan Agreements or to commence legal proceedings or otherwise proceed against Debtor in any other jurisdiction.  See ECF No. 1-1 at 44.  Therefore, the Court finds that venue is proper in the Eastern District of California.[3]

/ / /

---

[3] Even if venue was not proper in the Eastern District of California, venue has been waived.  The Court notes that "venue, like jurisdiction over the person, may be waived. A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."  Hoffman v. Blaski, 363 U.S. 335, 343 (1960).  Given that Defendant has been properly served, as discussed below, default was entered against Defendant, and he has failed to object to venue in the Eastern District of California, venue has been waived.

3.     Service of Process

Rule 4 of the Federal Rules of Civil Procedure sets forth the requirements for the manner of service.  Rule 4(e) states that an individual may be served by following state law for service of the summons in the state where the court is located or by personally delivering a copy of the summons and a complaint, leaving a copy of each at the individual's usual place of abode, or delivering a copy of each to an agent authorized to receive service.  Fed. R. Civ. P. 4(e)(2).

Under California law, an individual may be served by delivering a copy of the summons and of the complaint to such person or to a person authorized by him to receive service of process.  Cal. Civ. Proc. Code § 416.90.

In lieu of personal delivery, Cal. Civ. Proc. Code § 415.20 permits service on an individual by substituted service which requires leaving the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address in the presence of a competent member of the household or a "person apparently in charge" and thereafter mailing a copy of the summons and of the complaint to the defendant at that same place the summons and complaint were left.  " 'Ordinarily, ... two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made.' " Bonita Packing Co. v. O'Sullivan, 165 F.R.D. 610, 613 (C.D. Cal.1995) (quoting Bein v. Brechtel–Jochim Group, Inc., 6 Cal.App.4th 1387, 1390 (1992) (citing Espindola v. Nunez, 199 Cal.App.3d 1389, 1392 (1988))).

On April 21, 2016, Plaintiff served a copy of the summons and complaint on Defendant by leaving the documents with Mandeep Singh, an occupant, receptionist, and the individual who appeared to be in charge, at 5290 West Donner Avenue, Fresno, California, and then the documents were mailed.  (Proof of Service, ECF No. 5.)  Plaintiff's proof of service states that Defendant is a business.  Id.  However, Defendant was sued individually and the Loan Agreements were made to Defendant as an individual.  The Loan Agreements reference that the equipment was to be used for only business purposes, so it appears that Defendant ran or is running a business.  It does not matter whether Defendant was served at his dwelling house, usual place of abode, or usual place of business, because Mandeep Singh was both an occupant

of the address and an individual who appeared to be in charge according to the proof of service. Also, the proof of service indicates that the process server attempted to serve Defendant three separate occasions at different times of the day prior to serving Defendant by substituted service. Therefore, service was proper under California law.

      4.    Personal Jurisdiction

      Personal jurisdiction is appropriate as Defendant was served at his residence in Fresno, CA.

    **B.**    **The Eitel Factors Weigh in Favor of Default Judgment**

      As discussed below, consideration of the Eitel factors weighs in favor of granting default judgment in this instance.

      As a preliminary matter, the Court notes that the Loan Agreements provide that "the transactions contemplated by this Agreement are deemed approved and entered into within the State of Utah and all credit or other financial accommodations extended by Lender under the Agreement shall be deemed extended from and subject to the laws of the State of Utah (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment." (ECF No. 1-1 at 5, 11, 17, 23, 29, 35, 41, 47, 53.) Therefore, provision 7.6 of the Loan Agreements states that Utah law should apply to lawsuits involving the Loan Agreements. Despite this, Plaintiff sets forth the breach of contract standard under California law in the motion for default judgment. The Court inquired at the hearing which state's laws should apply and Plaintiff was permitted the opportunity to file a supplement. On September 30, 2016, Plaintiff filed its supplement. (ECF No. 20.) In the supplement, Plaintiff states that Utah law should apply. (ECF No. 2 at 2-3.)

      A district court sitting in diversity generally must apply the choice of law rules for the state in which it sits. Rennick v. O.P.T.I.O.N. Care, Inc., 77 F.3d 309, 313 (9th Cir. 1996) (citations omitted). This Court finds that, "[u]nder California choice of law rules, contracting parties may agree to what law controlled unless the choice is contrary to a fundamental interest of a state with a materially greater interest." Id. In California, "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial

1   relationship to the parties or the transaction or any other reasonable basis exists for the parties'

2   choice of law.' " 1–800–Got Junk? LLC v. Super. Ct., 189 Cal.App.4th 500, 513–14 (2010)

3   (quoting Trust One Mortg. Corp. v. Invest Am. Mortg. Corp., 134 Cal.App.4th 1302, 1308

4   (2005)).  There is a strong policy in favor of enforcing choice of law provisions.  1–800–Got

5   Junk? LLC, 189 Cal.App.4th at 513.

6   "[I]f the proponent of the clause demonstrates that the chosen state has a substantial

7   relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the

8   choice of law, the parties' choice generally will be enforced unless the other side can establish

9   both that the chosen law is contrary to a fundamental policy of California and that California has

10  a materially greater interest in the determination of the particular issue." Id. at 514 (emphasis in

11  original).  Defendant has not appeared in this action, and therefore has not presented evidence

12  that Utah has a substantial relationship to the parties or the transaction.  Plaintiff has not

13  presented evidence that Utah has a substantial relationship to the parties or the transaction, or

14  that there is a reasonable basis for enforcing the choice of law provision.  At the September 20,

15  2016 hearing, in light of the Court's question as to which state's law applies to the contract since

16  the Loan Agreements state Utah, Plaintiff stated that it did not know how Utah was related to the

17  Loan Agreements.  The Court allowed Plaintiff the opportunity to file a supplement addressing

18  which state's law should apply and the reasoning.  However, Plaintiff did not present any choice

19  of law analysis in the supplement or explain how Utah is connected to the transaction and the

20  parties.  Plaintiff merely states that Utah law is controlling and that the Loan Agreements are

21  governed by the laws of the state of Utah.  (ECF No. 20 at 2-3.)

22  The allegations in Plaintiff's complaint, which the Court accepts as true following the

23  entry of default, do not demonstrate that Utah has a substantial interest in the parties to this suit.

24  (ECF No. 1.)  Here, Plaintiff is the successor-in-interest to GE Capital.  The only information

25  that is in the record regarding GE Capital is the Loan Agreements.  The Loan Agreements are

26  signed by authorized signers and the address is in Texas. [4]  (ECF No. 1-1 at 6, 12, 18, 24, 30, 36,

27  _____

[4] The results of a Business Search with the Division of Corporations and Commercial Code in Utah reveals that GE Capital is a registered foreign corporation in Utah and it is incorporated in Delaware. https://secure.utah.gov/bes/details.html?entity=5643178-0143.

28

42, 48, 54, 60.)  There is nothing in the record to suggest that GE Capital had a substantial relationship to Utah.  There is also nothing in the record to suggest that Defendant had a substantial relationship to Utah.  Defendant was a resident of California at the time the Loan Agreements were signed.  There is nothing to indicate that the equipment which was purchased with the proceeds of the Loan Agreements would be used in Utah.  The proceeds of the Loan Agreements were used to purchase the equipment from a Fresno, California company.  There is no indication in the record that Defendant had any connection to Utah.  Accordingly, on the current record, the Court finds that the Loan Agreements' choice of law provision is not enforceable, and therefore, Utah law would not apply and California law would apply.

### 1.   Prejudice to Plaintiff if Default Judgment is Not Granted

The first factor weighs in favor of entry of default judgment.  If default judgment is not entered, Plaintiff is effectively denied a remedy for the violations alleged in this action unless Defendant appears.  Defendant may never appear in the action.  Therefore, this factor weighs in favor of granting default judgment.

### 2.   The Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint

The court is to evaluate the merits of the substantive claims alleged in the complaint as well as the sufficiency of the complaint itself.  In doing so, the court looks to the complaint to determine if the allegations contained within are sufficient to state a claim for the relief sought.  Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).  Plaintiff alleges four claims in the complaint: (1) injunctive relief; (2) specific performance; (3) breach of contract; and (4) claim and delivery.  (ECF No. 1 at 8-13.)  However, only breach of contract is an actual claim for relief.  The other three claims are forms of relief.

Plaintiff's first cause of action is entitled "Injunctive Relief."  (ECF No. 1 at 8-9.)  Injunctive relief is an equitable remedy and not a cause of action.  See Roberts v. Los Angeles County Bar Assn., 105 Cal.App.4th 604, 618 (2003).

Plaintiff's second cause of action is entitled "Specific Performance."  (ECF No. 1 at 10.)  Specific performance is not an independent cause of action, but a remedy.  See Inkster v. Fed. Home Loan Mortgage Corp., 1:12-cv-01249-LJO-MJS 2012 WL 5933034, at *4 (E.D. Cal. Nov.

1  27, 2012) ("Specific performance is a form of contractual relief, not an independent claim.").

2      Plaintiff's third cause of action is entitled "Breach of Contract." (ECF No. 1 at 11.) The

3  Court finds that under California law, Plaintiff has alleged sufficient facts for a claim for breach

4  of contract.[5]  Under California law, to prevail on a breach of contract claim, a plaintiff must

5  establish: (1) the existence of a contract; (2) plaintiff's performance or excuse for

6  nonperformance; (3) breach by the defendant; and (4) causation of damages. Wall St. Network,

7  Ltd. v. N.Y. Times Co., 164 Cal. App. 4th 1171, 1178 (2008).

8      GE Capital made loans to Defendant to purchase the Collateral, and Defendant granted

9  GE Capital first-priority security interests in the Collateral and agreed to repay the loans pursuant

10  to the Loan Agreements. (Compl. at ¶¶ 5-17.)  GE Capital subsequently transferred all of its

11  rights, title, and interest in the Loan Agreements and Collateral to Plaintiff.  (Id. at 18.)

12  Defendant defaulted under the terms of the Loan Agreements by failing to make payments as

13  they became due and payable, so Plaintiff sent a notice of default and acceleration to Defendant

14  on March 17, 2016. (Id. at ¶ 22, 24.)  Plaintiff has performed all of its obligations under the

15  Loan Agreements, but Defendant has failed to cure the defaults. (Id. at ¶ 25.)  Defendant owes

16  Plaintiff the amount of money due under the Loan Agreements, so the breach caused damages.

17  (Id. at ¶ 23.)  Therefore, accepting all factual allegations in the complaint as true, Plaintiff has

18  adequately demonstrated a substantial likelihood of success on the merits of its breach of

19  contract claim against Defendant.

20      Plaintiff's fourth cause of action is entitled "Claim and Delivery." (ECF No. 1 at 11-13.)

21  Plaintiff seeks all of the collateral under the Loan Agreements pursuant to Federal Rule of Civil

22  Procedure 64 and California Code of Civil Procedure Section 512.010, *et seq.*   Claim and

23  delivery is not a separate action but a remedy to return specific property and to award incidental

24  damages. Adler v. Taylor, No. 04-8472-RGK(FMOX), 2005 WL 4658511, at *3 (C.D. Cal. Feb.

25

26  [5] Under Utah law, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by
the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." Campbell, Maack &
27  Sessions v. Debry, 2001 UT App 397, ¶ 21, 38 P.3d 984, 991 (2001) (quoting Bair v. Axiom Design, L.L.C., 2001
UT 20 at ¶ 14, 20 P.3d 388 (2001)).  Therefore, the elements for a breach of contract are nearly identical under
28  California and Utah law.  Even if the Court were to apply Utah law, Plaintiff has alleged sufficient facts for a claim
for breach of contract under Utah law.

2, 2005).  In California, courts use claim and delivery which is identical to the federal remedy of replevin.  Id.  An action for claim and delivery requires a plaintiff to show a right to possession and the defendant's wrongful possession of the property at issue.  Id.; see Stalcup v. Liu, No. 11-00002-JSW, 2011 WL 1753493, at *6 (N.D. Cal. April 22, 2011); Cal. Civ. Code § 3379; Cal. Civ. Proc. Code § 512.010.  Accordingly, this factor weighs in favor of default judgment.

### 3.  The Sum of Money at Stake in the Action

The sum of money at stake in this action also weighs in favor of default judgment. Default judgment is disfavored where large amounts of money are involved or the award would be unreasonable in light of the defendant's actions.  G & G Closed Circuit Events, LLC v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012).  In this action, Plaintiff is seeking $710,733.75.  The Court finds that while the amount of money at stake in the action is significant, it is reasonably proportionate to the harm caused by Defendant's breach of the Loan Agreements.  Therefore, this factor weighs in favor of granting default judgment.

### 4.  The Possibility of a Dispute Concerning Material Facts

In this action, Plaintiff has filed a well-pleaded complaint including the elements necessary to prevail on the causes of action alleged.  The Clerk of the Court has entered default and therefore, the factual allegations in the complaint are taken as true.  There is nothing to suggest that there are genuine of issues of material fact in dispute in this action.  Accordingly, this factor weighs in favor of granting default judgment.

### 5.  Whether the Default Was Due to Excusable Neglect

Defendant has failed to file a responsive pleading, or oppose the motion for default judgment.  Over four months have passed since Plaintiff served the complaint in this action. Additionally, it has been over three months since the Clerk entered default against Defendant. Defendant has been provided with two notices regarding this action and given the amount of time that has passed without Defendant responding, the possibility that the failure to respond is due to excusable neglect is remote.  This factor weighs in favor of granting default judgment.

### 6.  The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring

<u>Decisions on the Merits</u>

Whenever possible cases should be decided on the merits, however, a defendant's failure to answer the complaint "makes a decision on the merits impractical if not impossible." <u>PepsiCo, Inc. v. California Security Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. Dec. 27, 2002). In this instance, the other factors in favor of default judgment outweigh the policy favoring a decision on the merits.

**C.     Relief**

1.     <u>Principal, Prejudgment Interest, and Late Fees</u>

California law provides that, "[f]or the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."  Cal. Civ. Code § 3300.  In addition, breach of contract damages must be "clearly ascertainable in both their nature and origin." Cal. Civ. Code § 3301.

Here, Plaintiff has submitted the Loan Agreements between GE Capital and Defendant, as well as evidence of loan damage calculators detailing the amounts that Defendant owes for his default.  Although the loan damage calculator states that the principal balance amount is a balance from an amortization schedule row, the Court notes that Plaintiff did not submit the amortization schedule.  Based upon the loan damage calculators that Plaintiff submitted and the Loan Agreements, the Court finds that Plaintiff has adequately proven that it is entitled to $684,673.43 in principal.

Plaintiff seeks interest based on the principal amount as of March 14, 2016.  (ECF No. 16-2 at 11-30.)  Clause 5.3 of the Loan Agreements states, "[d]ebtor agrees to pay Lender, upon acceleration of the above indebtedness, Interest on all sums then owing hereunder the at the rate of 1 1/2% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law." (ECF No. 1-1 at 4, 10,

16, 22, 28, 34, 40, 46, 52.)[6]   Therefore, the Court finds that Plaintiff is entitled to 24,542.86 in interest.  The Court finds that Plaintiff has adequately proven that it is entitled to $1,517.46 in late fees.

        2.    <u>Equitable Relief</u>

        Plaintiff requests a judgment of possession of three tractors which have been retained by Defendant ("Retained Collateral").  The Court notes that Plaintiff did not provide any law or citations in support of its request for judgement of possession in the amended motion for default judgment.  In the complaint, Plaintiff cited to Federal Rule of Civil Procedure 64 and California Code of Civil Procedure Section 512.010, <u>et seq.</u>  Plaintiff cited sections of the California Commercial Code in the September 30, 2016 supplement.[7]

        Cal. Com. Code § 9601(a)(1) provides that "[a]fter default, a secured party has the rights provided in this chapter and, except as otherwise provided in Section 9602, those rights provided by agreement of the parties.  A secured party may…reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure."  Plaintiff seeks to utilize Cal. Com. Code § 9609(a)(1) , (b)(1)-(2), and (c).

        Cal. Com. Code § 9609 provides:

> (a) After default, a secured party may do both of the following:
> > (1) Take possession of the collateral.
>
> . . .
> (b) A secured party may proceed under subdivision (a) in either of the following ways:
> > (1) Pursuant to judicial process.
> > (2) Without judicial process, if it proceeds without breach of the
> peace.
> > (c) If so agreed, and in any event after default, a secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties.

Cal. Com. Code § 9609.

---

[6] The Court notes that Plaintiff did not provide the page containing clause 5.3 for the December 18, 2014 Loan Agreement pertaining to the 2015 Vanguard Refrigerated Van and 2014 Thermo King S600, which is loan number 7942706001.  (ECF No. 1-1.)  Plaintiff erroneously included multiple copies of other Loan Agreements in Exhibit J. The Court notes that the ten Loan Agreements are nearly identical, and therefore, the Court finds that all ten Loan Agreements include clause 5.3.

[7] The Court notes that the Utah Commercial Code is nearly identical to the California Commercial Code.

Federal Rule of Civil Procedure 64(a) provides: "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Rule 64(b) provides that the remedies available under Rule 64(a) include arrest, attachment, garnishment, replevin, and sequestration. In an application for writ of possession, a plaintiff must show: "(1) ... the basis of the plaintiff's claim and that the plaintiff is entitled to possession of the property claimed .... (2) the property is wrongfully detained by the defendant.... (3) A particular description of the property and a statement of its value. (4) ... the location of the property .... [and] (5) ... that the property has not been taken for a tax, assessment, or fine ... or seized ...." GE Commercial Distribution Finance Corp. v. England Endeavors, Inc., No. 2:12-cv-00715-KJM-EFB, 2012 WL 1232339, at *1 (E.D. Cal. April 12, 2012) (citing Cal. Code. Civ. P. § 512.010(b)).

California Code of Civil Procedure Section 512.010 provides:

(a) Upon the filing of the complaint or at any time thereafter, the plaintiff may apply pursuant to this chapter for a writ of possession by filing a written application for the writ with the court in which the action is brought.

(b) The application shall be executed under oath and shall include all of the following:

(1) A showing of the basis of the plaintiff's claim and that the plaintiff is entitled to possession of the property claimed. If the basis of the plaintiff's claim is a written instrument, a copy of the instrument shall be attached.

(2) A showing that the property is wrongfully detained by the defendant, of the manner in which the defendant came into possession of the property, and, according to the best knowledge, information, and belief of the plaintiff, of the reason for the detention.

(3) A particular description of the property and a statement of its value.

(4) A statement, according to the best knowledge, information, and belief of the plaintiff, of the location of the property and, if the property, or some part of it, is within a private place which may have to be entered to take possession, a showing that there is probable cause to believe that such property is located there.

(5) A statement that the property has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property of the plaintiff; or, if so seized, that it is by statute exempt from such seizure.

(c) The requirements of subdivision (b) may be satisfied by one or more affidavits filed with the application.

14

1  Cal. Civ. Proc. Code § 512.010. [8]

2      The Court analyzes whether the requirements of Section 512.010 of the California Code
3  of Civil Procedure are met.  As discussed above, the Court finds that Plaintiff has proven that
4  Defendant breached the Loan Agreements. Plaintiff's claims are laid out in the complaint and the
5  amended motion for default judgment.  In support of the amended motion for default judgment,
6  Plaintiff submits the sworn declaration of BMO Harris Bank N.A.'s Litigation Specialist, Micki
7  Koepke.  Decl. of Micki Koepke ("Koepke Decl."), ECF No. 16-2.  Koepke has personal
8  knowledge of the facts in the declaration and in charge of the accounts maintained by Plaintiff
9  with respect to Defendant.  Id. at ¶¶ 2, 3.  Plaintiff puts forth evidence that Defendant came into
10 possession of the Retained Collateral by virtue of the Loan Agreements between the parties and
11 that Defendant is more than $235,000 behind in his payments.  Id. at ¶¶ 23, 26; ECF No. 16-2 at
12 19, 20, 23-26; ECF No. 1 at 32-42, 50-54.  In light of the above, Plaintiff has made a sufficient
13 showing for purposes of this application for a writ of possession of the basis of Plaintiff's claim
14 and that Defendant has wrongfully detained the tractors.

15     Plaintiff provides the VINs of the Retained Collateral in the Koepke Declaration.
16 Koepke Decl. at ¶ 26.  The VINs match the serial numbers on the Loan Agreements.  (ECF No. 1
17 at 32-42, 50-54.)  The three Loan Agreements for the Retained Collateral contain loan numbers,
18 which are on the loan damage calculators.  (ECF No. 16-2 at 19, 20, 23-26.)  Koepke states in the
19 declaration that, assuming the three tractors are functional for their intended purpose and in
20 immediately salable condition, they have a fair market value of approximately $127,406.00.

---

[8] Although Plaintiff did not file a separate application for a writ of possession, Plaintiff requested a judgment for possession of the Retained Collateral in the amended motion for default judgment.  The Court construes the request for a judgment for possession of the Retained Collateral in the amended motion for default judgment as an application for a writ of possession.  Micki Koepke's declaration in support of Plaintiff's motion for entry of default judgment sets forth the requirements of Section 512.010(b) of the California Code of Civil Procedure.  The Court finds that although Plaintiff did not provide Defendant with a notice of application and hearing as required by Section 512.040, the amended motion for default judgment and Micki Koepke's declaration are sufficient in place of a notice of application and hearing.  Here, Defendant was on notice that Plaintiff requested a judgment for possession of the Retained Collateral because Plaintiff served Defendant with the summons and complaint, amended motion for default judgment, Micki Koepke's declaration, and the order moving the hearing.  Defendant received notice of the date and time of the hearing in this matter, but did not appear at the hearing or make any other appearance in this action.  Therefore, the Court finds that Defendant was not prejudiced by Plaintiff's failure to precisely comply with Section 512.010, et seq.  Although the Court finds that Plaintiff has substantially complied with the requirements of Section 512.010, et seq., Plaintiff is cautioned to pay greater attention to detail in any future applications.

1    Koepke Decl. at ¶ 29.  Therefore, Plaintiff has provided a particular description of the property

2    and a statement of the value.

3         Koepke states that based upon the best knowledge, information, and belief of Plaintiff,

4    the tractors are located at 3767 South Golden State Blvd in Fresno, California.  Id. at 32.  Koepke

5    states that this address is being used as part of Defendant's business operations.  Id.  Based on

6    the facts in this case, the Court finds that Plaintiff has shown probable cause to believe that the

7    tractors are located on this address.  Koepke also states that the property has not been taken for a

8    tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property

9    of the plaintiff.  Id. at 33.

10        Therefore, the Court finds that Plaintiff has met the requirements of California Code of

11   Civil Procedure § 512.010.

12        California Civil Procedure Code § 512.060 sets forth additional requirements before the

13   writ may issue.  California Civil Procedure Code § 512.060 provides that:

14        (a) At the hearing, a writ of possession shall issue if both of the following are
          found:
15
16        (1) The plaintiff has established the probable validity of the plaintiff's claim to
          possession of the property.

17        (2) The undertaking requirements of Section 515.010 are satisfied.

18        (b) No writ directing the levying officer to enter a private place to take possession
          of any property shall be issued unless the plaintiff has established that there is
19        probable cause to believe that the property is located there.

20   Cal. Civ. Proc. Code § 512.060.

21        Two of the three requirements under Section 512.060 are duplicative of requirements

22   under Section 512.010.  For the reasons discussed above, Plaintiff has already established the

23   validity of its claim to possession of the tractors and probable cause to believe that the tractors

24   are located at the above-mentioned address.  Therefore, the Court only needs to decide whether

25   the undertaking requirements of California Civil Procedure Code § 515.010 have been satisfied.

26   Cal. Civ. Proc. Code § 512.060(a)(2).

27        Section 515.010 requires a plaintiff to file an undertaking in an amount of not less than

28   twice the value of the defendant's interest in the property.  Here, Plaintiff provides evidence that

1   the market value of the tractors is $127,406.00.  Plaintiff also provides evidence that the amount

2   owed to it is over $235,000.  Therefore, Plaintiff provides evidence that the market value of the

3   tractors is less than the amount owed to Plaintiff.  Therefore, the Court finds that Defendant does

4   not have a positive interest in the tractors and that Plaintiff should not be required to furnish an

5   undertaking.  If Defendant wishes to retain custody of the tractors, he should post a redelivery

6   bond.  The Court finds that Defendants shall file an undertaking of $244,128.82 if they wish to

7   keep possession of the three tractors which are the Retained Collateral.

8        Defendant should be directed to transfer possession of the Retained Collateral to Plaintiff.

9   Failure to turn over possession of such property may subject Defendant to being held in

10   contempt of court.

11       In addition, Plaintiff seeks to permanently enjoin Defendant from using the Retained

12   Collateral or restricting access of Plaintiff to the Retained Collateral as of the date of entry of the

13   judgment.  Plaintiff also seeks an order requiring Defendant to disclose to Plaintiff the precise

14   location of the Retained Collateral and deliver the Retained Collateral to Plaintiff immediately

15   upon entry of judgment.  However, Plaintiff does not provide any citations or legal support in

16   any of its filings for these requests.  Although Plaintiff cites Cal. Com. Code §§ 9601(a)(1),

17   9607(d), 9609(a)(1), (b)(1)-(2), and (c), and 9610(a), these sections do not provide for the relief

18   that Plaintiff seeks.  Therefore, the Court recommends that these requests be denied.

19       3.   Attorney Fees and Costs

20       Plaintiff is requesting attorney fees and costs of $6,990.25 in this action, which consists

21   of $5,959.50 in fees and $1,030.75 in costs.  California and the Ninth Circuit utilize the

22   "lodestar" approach for assessing reasonable attorney fees, where the number of hours

23   reasonably expended is multiplied by a reasonable hourly rate.  Gonzalez v. City of Maywood,

24   729 F.3d 1196, 1202 (9th Cir. 2013); Ketchum v. Moses, 24 Cal. 4th 1122, 1131, 17 P.3d 735,

25   741 (2001).  "[T]he lodestar is the basic fee for comparable legal services in the community; it

26   may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and

27   difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to

28   which the nature of the litigation precluded other employment by the attorneys, (4) the

1    contingent nature of the fee award." <u>Ketchum</u>, 24 Cal.4th at 1132.

2        California courts consider the reasonableness of an attorney fee by considering a variety

3 of factors: "the nature of the litigation, its difficulty, the amount involved, the skill required and

4 the skill employed in handling the litigation, the attention given, the success of the attorney's

5 efforts, his learning, his age, and his experience in the particular type of work demanded; the

6 intricacies and importance of the litigation, the labor and the necessity for skilled legal training

7 and ability in trying the cause, and the time consumed." <u>Martino v. Denevi</u>, 182 Cal.App.3d

8 553, 558 (1986).[9] "To enable the trial court to determine whether attorney fees should be

9 awarded and in what amount, an attorney should present '(1) evidence, documentary and oral, of

10 the services actually performed; and (2) expert opinion, by [the applicant] and other lawyers, as

11 to what would be a reasonable fee for such services.' " <u>Martino</u>, 182 Cal.App.3d at 558 (citations

12 omitted). The party seeking fees has the burden to prove that the fees sought are reasonable.

13 <u>Ctr. For Biological Diversity v. Cty. of San Bernardino</u>, 188 Cal. App. 4th 603, 615 (2010), as

14 modified (Oct. 18, 2010).

15      **a.**    **Reasonable Hourly Rate**

16        The lodestar rate is calculated by multiplying the hours reasonably spent in the litigation

17 by the "hourly prevailing rate for private attorneys in the community conducting noncontingent

18 litigation of the same type." <u>Ketchum</u>, 24 Cal.4th at 1133. This is the hourly amount for which

19 attorneys of like skill in the area would typically be entitled. <u>Id.</u> The Supreme Court explained

20 that the loadstar amount is to be determined based upon the prevailing market rate in the relevant

21 community. <u>Blum v. Stenson</u>, 465 U.S. 886, 896 (1984). The "relevant legal community" for

22 the purposes of the lodestar calculation is generally the forum in which the district court sits.

23

24   [9] In determining a reasonable fee, the Supreme Court of Utah recognized that various courts consider "the relationship of the fee to the amount recovered, the novelty and difficulty of the issues involved, the overall result

25 achieved, and the necessity of initiating a lawsuit to vindicate the rights in the contract." <u>Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.</u>, 645 P.2d 667, 671 (Utah 1982) (internal citations omitted.) The Supreme Court of Utah held

26 that a court should practically consider the legal work that was actually performed; consider the amount of work that was reasonably necessary to adequately prosecute the matter; compare the attorney's billing rate with the rates

27 customarily charged in the locality for similar services; and consider whether there are circumstances of additional factors including those listed in the Code of Professional Responsibility. <u>See Dixie State Bank v. Bracken</u>, 764 P.2d

28 985, 990 (Utah 1988). The Court finds that even if Utah law was used to determine the amount of attorney fees in this mater, the same amount would be awarded.

1   Gonzalez, 729 F.3d at 1205.

2          Plaintiff is seeking $175.00 for work performed by Elizabeth Arundel, $235.00 for work

3   performed by Kelley Tibble, $370.00 for work performed by Ms. Tabibkhoei, $370.00 for work

4   performed by Timothy Harris, and $495.00 for work performed by Alexander Terras.  (ECF No.

5   16-3 at 8-10.)

6          In the Fresno Division of the Eastern District of California, attorneys with experience of

7   twenty or more years of experience are awarded $350.00 to $400.00 per hour.  See Jadwin v.

8   County of Kern, 767 F.Supp.2d 1069, 1169 (E.D. Cal. 2011) (finding an hourly rate of $350.00

9   is near the top range of hourly rates in the Fresno Division and awarding $380.00 per hour to an

10  attorney with 40 years of experience); Miller v. Schmitz, No. 1:12-CV-00137-LJO, 2014 WL

11  642729, at *3 (E.D. Cal. Feb. 18, 2014), appeal dismissed (July 10, 2014), motion for relief from

12  judgment denied, No. 1:12-CV-00137-LJO, 2014 WL 1689930 (E.D. Cal. Apr. 29, 2014)

13  (awarding $350.00 per hour to Mr. Little who has twenty five years of experience, see ECF No.

14  218); Silvester v. Harris, No. 1:11-CV-2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal.

15  Dec. 17, 2014) (awarding attorneys with twenty years of experience $335.00 and $375.00 per

16  hour); Verduzco v. Ford Motor Co., No. 1:13-CV-01437-LJO, 2015 WL 4131384, at *4 (E.D.

17  Cal. July 9, 2015) report and recommendation adopted, No. 1:13-CV-01437-LJO, 2015 WL

18  4557419 (E.D. Cal. July 28, 2015) (awarding attorney with over 40 years of experience $380.00

19  per hour).

20         Courts in the Eastern District of California, Fresno Division, have found that the

21  reasonable hourly rates for competent attorneys with less than fifteen years of experience are

22  $250 to $350 per hour.  See White v. Rite of Passage Adolescent Treatment Centers and Schools,

23  No. 1:13-cv-01871-LJO-BAM, 2014 WL 641083, at *5 (E.D. Cal. Feb. 18, 2014) (awarding

24  $300.00 per hour for counsel with six years of experience in representation action under the

25  California Private Attorney General Act of 2004); Ramirez v. Merced County, No. 1:11-cv-

26  00531-AWI-DLB, 2013 WL 4780440, at *9 (E.D. Cal. Sept. 5, 2013) (awarding $350.00 per

27  hour to attorney with more than 30 years of experience and $250.00 for attorney with 14 years of

28  experience); Jadwin, 767 F.Supp.2d at 1134 (awarding hourly rates of $350.00 for attorney with

14 years of experience, $275.00 for attorney with 11 years of experience, and $295.00 for contract attorney with 18 years of experience in employment action).

Courts in this division find that the prevailing rate for an attorney with less than two years of experience would range from $125.00 to $200.00 per hour. <u>See</u> <u>Miller</u>, 2014 WL 642729, at *2 (awarding $125.00 per hour for attorney with nine months of experience); <u>Gerawan Farming, Inc. v. Rehrig Pac. Co.</u>, No. 1:11-CV-1273 LJO BAM, 2013 WL 6491517, at *11 (E.D. Cal. Dec. 10, 2013) (awarding $150.00 per hour for a new attorney who worked on a complicated patent dispute); <u>Fitzgerald v. Law Office of Curtis O. Barnes</u>, No. 1:12-CV-00071-LJO, 2013 WL 1627740, at *4 (E.D. Cal. Apr. 15, 2013) report and recommendation adopted, No. 1:12-CV-00071 LJO, 2013 WL 1896273 (E.D. Cal. May 6, 2013) (awarding attorney with one year of experience $200.00 per hour); <u>Silvester</u>, 2014 WL 7239371, at *4 (awarding attorneys with one year experience $150.00 and $175.00 per hour).

In this division, the reasonable rate of compensation for a paralegal would be between $75.00 to $150.00 per hour depending on experience. <u>Sanchez</u>, 2015 WL 4662636, at *18 ((finding reasonable rate for paralegal was $125.00 per hour and legal assistant was $75.00 per hour in a wage and hour class action); <u>see also</u> <u>Willis</u>, 2014 WL 3563310, at *14; <u>Miller</u>, 2014 WL 642729, at *2 (awarding $100.00 per hour for a paralegal); <u>Silvester</u>, 2014 WL 7239371, at *4 (current reasonable rate for paralegal work in Fresno is between $75.00 and $150.00 depending on experience); <u>Gordillo v. Ford Motor Co.</u>, No. 1:11-CV-01786 MJS, 2014 WL 2801243, at *6 (E.D. Cal. June 19, 2014) (awarding $125.00 per hour for paralegal work).

Prior to the hearing, Plaintiff did not provide any information in the amended motion for default judgment regarding whether the people who performed work on this matter are attorneys or non-attorney support staff, except for Ms. Tabibkhoei. The Court raised this issue at the hearing and allowed Plaintiff the opportunity to supplement the information regarding the time detail and information about the attorneys and non-attorney support staff who worked on this matter. On September 30, 2016, Ms. Tabibkhoei filed a supplemental declaration in support of the amended motion for default judgment. (ECF No. 20-1.)

Ms. Tabibkhoei declares that she is a senior associate at Reed Smith LLP; she obtained

her Juris Doctor ("JD") in 2009; and she has been practicing law for 7 years.  (ECF No. 2-1 at ¶ 5.)  However, the Court does not have any other information about Ms. Tabibkhoei's experience and qualifications, including any information about specialization.  Plaintiff does not argue that this case required special attention or that it involved a novel issue.  Based upon the limited information provided, the Court finds that $275.00 per hour is a reasonable rate of compensation for Ms. Tabibkhoei's work on this matter.

Ms. Tabibkhoei's declaration states that Ms. Tibble is a mid-level associate at Reed Smith LLP; she obtained her JD in 2012; and she has been practicing law for 4 years.  (ECF No. 201 at ¶ 7.)  Although there is no further information regarding qualifications or specialized experience, the Court finds that $235.00 per hour is a reasonable rate of compensation for Ms. Tibble's work on this matter considering that she has been practicing law for 4 years.

Ms. Tabibkhoei's declaration states that Mr. Terras is a partner at Reed Smith LLP, he obtained his JD in 1977, and has been practicing law for 39 years.  (ECF No. 20-1 at ¶ 6.)  However, the Court does not have any other information about Mr. Terras's experience and qualifications, including any information about practice in specialized areas of law.  Therefore, the Court finds that $375.00 is a reasonable rate of compensation for Mr. Terras's work on this matter.

Ms. Tabibkhoei's declaration states that Mr. Harris is of counsel at Reed Smith LLP; he obtained his JD in 1988; and he has been practicing law for 28 years.  (ECF No. 20-1 at ¶ 4.)  Although there is no further information regarding qualifications or specialized experience, the Court finds that $370.00 is a reasonable rate of compensation for Mr. Harris's work on this matter.

Ms. Tabibkhoei's declaration states that Ms. Arundel has been a paralegal at Reed Smith LLP since 2010, so she has approximately six years of experience as a paralegal.  (ECF No. 20-1 at ¶ 8.)  As Ms. Arundel is a paralegal with six years of experience, and there is no information regarding any specialized experience, the Court finds that $100.00 per hour is a reasonable rate of compensation for Ms. Arundel's work on this matter.

/ / /

### b.   Hours reasonably expended

It is within the discretion of the trial court to determine whether the amount of fees requested are reasonable.  Christian Research Inst. v. Alnor, 165 Cal.App.4th 1315, 1321 (2008).  Plaintiffs seek compensation for 20.8 hours in this matter as follows: .3 hours expended by Ms. Arundel, 3.8 hours expended by Mr. Harris, 3.5 hours expended by Ms. Tabibkhoei, .4 hours expended by Mr. Terras, and 12.8 hours expended by Ms. Tibble.  The Court finds that the number of hours of compensation requested by Plaintiff is reasonable in this action.

### c.   Lodestar calculation

Multiplying the reasonable hours billed in this action for each attorney or non-attorney support staff by the hourly rates for each attorney or non-attorney support staff, the Court finds that the award of attorney fees in this action should be $5,556.50 which is as follows:  $962.50 for Ms. Tabibkhoei, $3008.00 for Ms. Tibble, $150.00 for Mr. Terras, $1,406.00 for Mr. Harris, and $30.00 for Ms. Arundel.

### d.   Costs

Plaintiff seeks $1,030.75 in costs. (ECF No. 16-3 at 11.)  Plaintiff seeks the cost of the filing fee, service of process, and duplicating, printing, and/or scanning.  (ECF No. 16-3 at 11.)

In a diversity action, federal not state law controls the issue of costs.  Aceves v. Allstate Ins. Co., 68 F.3d 1160, 1167 (9th Cir. 1995); see also 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure ("Wright and Miller") § 2669 (3d ed. 1998).  Under federal law, 28 U.S.C. § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority."  Grove v. Wells Fargo Fin. California, Inc., 606 F.3d 577, 579 (9th Cir. 2010).  Those costs taxable under section 1920 are limited to relatively minor, incidental expenses.  Taniguchi v. Kan Pac. Saipan, Ltd., 132 S.Ct. 1997, 2006 (2012).  "Taxable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators.  It comes as little surprise, therefore, that 'costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit.' "  Taniguchi, 132 S.Ct. at 2006 (quoting Wright and Miller § 2666, p. 203).

" 'Even though not normally taxable as costs, out-of-pocket expenses incurred by an

1    attorney which would normally be charged to a fee paying client are recoverable as attorney's

2    fees.' " Molina v. Creditors Specialty Service, Inc., No. CIV. S–08–2975 GEB GGH, 2010 WL

3    235042 at *4 (E.D. Cal. Jan 21, 2010) (quoting Chalmers v. City of Los Angeles, 796 F.2d 1205,

4    1216 n. 7 (9th Cir.1986)).   The non-taxable costs of filing and serving the complaint fit this

5    description.   The docket shows that Plaintiff submitted $400.00 to file this action.   (ECF No. 1.)

6    Plaintiff has submitted the proof of service of the summons, but it does not show what the fee

7    was for service or the length of time required for the service effected. (ECF No. 5.)

8          Recovery of fees for the service of summons and subpoenas is permitted by 28 U.S.C. §

9    1920(1) and Local Rule 292(f)(2). Local Rule 292(f)(2) permits the taxation of costs for

10   "Marshal's fees and fees for service by a person other than the Marshal under Fed. R. Civ. P. 4 to

11   the extent they do not exceed the amount allowable for the same service by the Marshal (28

12   U.S.C. §§ 1920(1), 1921)."

13         Plaintiff has not demonstrated that its requested fees do not exceed the U.S. Marshal's

14   fees for service, as required by Local Rule 292(f).   See, e.g., Gregory v. Allied Prop. & Cas. Ins.

15   Co., No. CIV S-10-1872 KJM EF, 2013 WL 949529, at *1 (E.D. Cal. Mar. 11, 2013) (sustaining

16   objection to recovery of fees for service because prevailing party failed to comply with Local

17   Rule 292(f) regarding U.S. Marshal's fees for service). The Marshal's fees are established by

18   regulation at an hourly rate.   See 28 C.F.R. § 0.114.   Here, because the length of time required

19   for the service effected is not indicated by Plaintiff, the Marshal's fees for service cannot be

20   calculated by this Court.   Therefore, the Court does not tax the cost of service.

21         This court notes that 28 U.S.C. § 1920(3) provides for costs for "disbursements for

22   printing," but unlike other subsections in § 1920, does not expressly state that the cost of printing

23   must be "necessarily obtained" for a prevailing party to recover these costs. It would make little

24   sense to read § 1920 as permitting a prevailing party to recover any and all printing costs for a

25   matter, even if they were excessive and unnecessarily incurred.   Other courts who have

26   addressed the taxation of photocopying costs under § 1920 generally require the prevailing party

27   to show that the photocopying costs were necessary to the case.   See Competitive Techs. v.

28   Fujitsu Ltd., No. C-02-1673 JCS, 2006 WL 6338914, at *7-8 (N.D. Cal. Aug. 23, 2006);

1  A.H.D.C. v. City of Fresno, No. CIV-F-97-5498 OWW, 2004 WL 5866234, at *7 (E.D. Cal. Oct.

2  1, 2004).

3       Plaintiff has not provided sufficient detail to show that any of the duplicating, printing, or

4  scanning that it did was necessary.  Plaintiff provides no detail beyond the date and an amount of

5  money for the duplicating, printing, or scanning.  Therefore, the Court does not tax the cost of

6  duplicating, printing, or scanning.

7       Accordingly, the Court finds that the $400.00 filing fee should be taxed.

8       4.   Post-Judgment Interest

9       "Under the provisions of 28 U.S.C. § 1961, post-judgment interest on a district court

10  judgment is mandatory."  Air Separation, Inc. v. Underwriters at Lloyd's of London, 45 F.3d

11  288, 290 (9th Cir. 1995) (citing Perkins v. Standard Oil Co., 487 F.2d 672, 674 (9th Cir. 1973)).

12  Post-judgment interest applies to the entire judgment, including principal, pre-judgment interest,

13  attorney fees, and costs.  Id. at 291.  The post-judgment interest rate is set "at a rate equal to the

14  weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors

15  of the Federal Reserve System, for the calendar week preceding ... the date of the judgment." 28

16  U.S.C. § 1961(a).  Accordingly, Plaintiff shall be awarded post-judgment interest as set forth in

17  28 U.S.C. § 1961(c).[10]

18                                    **IV.**

19                             **RECOMMENDATION**

20       Based on the foregoing, IT IS HEREBY RECOMMENDED that:

21       1.   Plaintiff's amended motion for entry of default judgment be granted in part;

22       2.   Judgment be entered in Plaintiff's favor and against Defendant in the amount of

23            $710,733.75, which is as follows:

24       a.   $684,673.43 in principal;

25       b.   $24,542.86 in pre-judgment interest; and

26       c.   $1,517.46 in late fees;

27

28  _____
[10] See https://www.federalreserve.gov/releases/h15/current/default.htm.

24

3.    Plaintiff be awarded post-judgment interest as set forth in 28 U.S.C. § 1961(a), which shall accrue from the time of entry of judgment until the judgment is satisfied in full;

4.    Plaintiff be awarded reasonable attorney fees and costs in the amount of $5,956.50, which is $5,556.50 in attorney fees and $400.00 in costs, to be paid by Defendant;

5.    The Clerk of the Court be directed to issue a writ of possession directing the levying officer to seize and immediately turn over to Plaintiff or Plaintiff's representative the Retained Collateral.  The levying officer should be directed to retain the tractors in custody until released or sold pursuant to California Civil Procedure Code § 514.030. The levying officer shall further comply with all applicable requirements of California Civil Procedure Code §§ 514.010–514.050;

6.    Plaintiff established that there is probable cause to believe the property is located at 3767 South Golden State Blvd, Fresno, California. Cal. Code Civ. P. § 512.060(b).   Accordingly, the levying officer be permitted to enter 3767 South Golden State Blvd, Fresno, California to effect the provisions of this order;

7.    Defendant be directed to transfer possession of the Retained Collateral to Plaintiff.  Defendant should be cautioned that failure to turn over possession of the tractors to Plaintiff may subject Defendant to being held in contempt of court;

8.    Defendant be informed that they may prevent levy of the writ of possession or obtain redelivery of the Retained Collateral after levy of the writ of possession, if they file an undertaking pursuant to California Civil Procedure Code § 515.020 in the amount of $244, 128.82; and

9.    Plaintiff's request to enjoin Defendant from using the Retained Collateral or restricting access of Plaintiff to the Retained Collateral as of the date of entry of the judgment and mandating that Defendant disclose to Plaintiff the precise location of the Retained Collateral and deliver the Retained Collateral to Plaintiff be denied.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**October 4, 2016**__

_____
UNITED STATES MAGISTRATE JUDGE